# McDonald *v.* Lewis, Sheriff.

Where a debtor, in embarrassed circumstances, sells the contents of his shop to a third per-
son, but remains in the shop acting as a salesman, and the purchaser, for his own advantage
in business, retains the name of the former owner over the door, and the boxes and pack-
ages in the shop are marked with the name or the initials of the former owner, and, on an
attempt by a sheriff to seize the goods as the property of the debtor, he and the purchser
inform the sheriff that they had been sold, but the purchaser does not exhibit his bill of sale,
nor his books, offering nothing but his naked assertion to establish the sale, and the officer
seizes and takes away the goods, but, on the trial of an action instituted against him by the
purchaser for damages, brings the property into court, and offers to deliver it up if the
court so direct, judgment will be rendered against the officer, though the court be satisfied
of the *bona fides* of the sale, only for the restoration of the property, and for any damage
it may have sustained from want of proper care while in the hands of the sheriff, and for
costs. *Per Curiam :* The purchaser held out the vendor in a false light, to the public, and was
bound to give the officer something more than his mere naked assertion as proof of sale.
Nor are we prepared to say that there was such a legal change of possession as would
perfect the sale against creditors, supposing it to have been real and *bonâ fide.*

A PPEAL from the Third District Court of New Orleans, *Kennedy*, J.  *El-*
*more* and *King*, for the appellant, cited *Barry* v. *De Russy*, 1 Rob. 76.

McDONALD
v.
LEWIS.

*Peet* v. *Morgan*,, 6 Mart. N. S. 138.   *Yocum* v. *Bullitt*, Ib. 325.   *Duperon* v. *Van Winkle*, 4 Rob., 39.   *Lowry* v. *Erwin*, 6 Rob. 192.   *Crocker* v. *De Passau*, 5 La. 39.   *Walcott* v. *Pomroy*, 2 Pickering, 121.   *Grinnell* v. *Phillips*, 1 Mass. 530.   *Campbell* v. *Phelps*, 17 Mass., 244.   *Jameson* v. *Hendrick*, 2 Blackford, 94.   *William* v. *Lowndes*, 1 Hill, 579.

*Lee* and *Grymes*, for the defendant.   The judgment of the court (*Eustis*, C. J. dissenting,) was pronounced by

SLIDELL, J.   The court below was of opinion that the plaintiff had proved a *bonâ fide* purchase of the goods from *Tillotson*.   I do not feel entirely convinced upon that point; but I will give the plaintiff the benefit of the district judge's opinion, and assume that the sale was real and in good faith.   But what are the facts so far as the sheriff is concerned?

This sale, it is said, was made on the 16th February, 1847, upon which day the written bill of sale purports to be signed.   *Tillotson*, the vendor, an embarrassed debtor, remains in the shop, acting as salesman, down to the time of the seizure.   The sheriff's deputy goes, on the 9th April, 1847, to the shop, finds *Tillotson* there, and demands payment of the amount of the execution. : *Tillotson* tells him he cannot pay.   The officer replies, then I must seize the goods here.   *Tillotson* answers, they are not mine.   The officer retires, and in a little while returns, and threatens again to seize.   At this second visit *McDonald* comes into the shop, while the officer is parleying with *Tillotson*.   They both tell him *Tillotson* has sold the goods to *McDonald*.   But all the surrounding circumstances contradict the naked assertion of the parties.   *Tillotson's* sign is still on the on the outside of the shop.   The boxes and packages are marked with his name, either in full or by his initials.   *McDonald's* name appears no where.   The attorney of the plaintiff in execution insists that the alleged sale is a mere pretence, and that the officer should proceed.   The plaintiff, not exhibiting his bill of sale nor his books, and proffering nothing but his naked assertion, the officer seizes the goods and takes them away, and then this action is brought.   The plaintiff's title is produced for the first time on the trial of the cause, and then the sheriff brings the goods into court, and says he is ready to deliver them immediately if the court should so direct.

It seems to me, if we hold the sheriff liable in this case as a trespasser, when he was willing to restore the goods, it would be a great hardship upon the public officer, and would be in reality enabling a party to take advantage of his own wrong.   The plaintiff, even if he was a real purchaser, acted in such a way as to deceive the public, and this deliberately and for his own supposed interest.   When *Tillotson's* clerk was about leaving the shop, shortly after the sale, he asked *McDonald* whether he was to erase *Tillotson's* name from over the door.   *McDonald* replied, "that he would let it remain; that it would be of some advantage to him."   It seems to me, such a course of conduct should be discouraged.   It holds out the vendor in a false light to the public, and gives him a false credit.   In the case before us, it led the public officer into an error, the consequences of which the plaintiff now seeks to impose upon him.

I think the plaintiff was bound, in good conscience, to give the officer something more than his naked assertion, thus violently opposed by all the surrounding appearances.   Why was not the bill of sale shown, and the plaintiff's books, upon which he now relies?

The postion of a sheriff is one of great responsibility.   If he refuses to make a levy, and the plaintiff in the suit can show that the goods found in the possession of the defendant in the execution were in truth his property, he is entitled

to recover his debt *pro tanto* from the sheriff. And it seems that, in an action against the sheriff for a false return of *nulla bona*, it is sufficient to put the sheriff on his defence, for the plaintiff to show that the defendant in execution was in possession of property sufficient to satisfy the execution. *Magne* v. *Lyman*, 5 Wendell, 311. I do not find any textual provision in our laws, authorizing a sheriff to demand a bond of indemnity, and I have doubts whether he has a legal right to do so. If, on the other hand, he is to be held liable, as a wrong doer, for taking property which the owner has permitted to be surrounded by deceitful appearances, which entrap the sheriff, his double responsibility becomes grievous to a degree that appears to me unreasonable. I think very great weight is to be given to what was said in an argument by counsel, respecting what is properly characterized by the chief justice as a defect in our jurisprudence. At common law, when the sheriff is met by the assertion of an adverse title, he may impanel a jury to enquire in whom the property is vested; and their return will excuse him in an action of trespass. Bacon's Abridg. *verbo* sheriff. *Bailey* v. *Bates*, 8 Johnson, 143. With us a sheriff has no such power, and ought not to be held with the same severity to a party whose conduct was imprudent and well calculated to deceive the officer.

If this case were tested by the rules and principles of the common law, which has been invoked in argument by the plaintiff's counsel, I incline to the opinion that the sheriff would be permitted to return the goods upon payment of costs and mere nominal damages. I question if the action of trespass would lie in such a case; for, to sustain that action, it seems the the *taking must* be unjustifiable. Hence it is declared by respectable authority, that if a sheriff take the goods of A. under a writ of *fieri facias* after he has committed an act of bankruptcy, and afterwards the goods are assigned under a commission of bankruptcy, an action of trespass does not lie against the officer, although the goods do by relation become the property of the assignees from the time of committing the act; for as the officer might not know that A. had committed an act of bankruptcy, or that an assignment of the goods would be made, and as it was his duty to execute the writ, it would be unreasonable to punish him as a wrong doer. Bacon's Abridg. Trespass. So if A. mix his corn or money, with the corn or money of B., so that they cannot be distinguished, and B. take the whole, trespass does not lie, as there was a fault on the part of A. Ib. And so I should think a party would not be entitled to bring an action of trespass against the sheriff, who had left his goods in the possession of the defendant in execution in such manner as to give him all the appearance of ownership.

Then if the *taking* was not unjustifiable, the plaintiff would be driven to an action of trover; and I find it asserted by the same author that, in some cases, in that action it is allowed to bring the thing into court. "But herein", he remarks, "this distinction is to be observed; if trover is brought for a specific chattle of an unascertained quantity and quality, and unattended with any circumstances that may enhance the damages beyond the real value, but its real and ascertained value must be the sole measure of damages, then the specific thing demanded may be brought into court. But where there is an uncertainty either as to the quantity or quality of the thing demanded, or there is any tort accompanying it that may enhance the damage above the real value of the thing, and there is no rule whereby to estimate the additional value, then it shall not be brought into court." So in Brown on Action, it is said: "If the defendant return the goods, the plaintiff will only recover such damages as he has actually sustained; but he is at all events entitled to nominal damages, as the return of the goods does not

McDonald
*v.*
Lewis.

cure the conversion, but merely goes in mitigation of damages; and if there be a dispute as to the quantity of the goods converted, and the plaintiff refuses to receive back the portion offered, the court will, upon application for the purpose, stay the proceedings, on delivery of such portion of the goods and payment of costs and damages; and if the plaintiff refuse to accept such terms, will permit the defendant to deliver up the goods, the plaintiff to pay the costs incurred subsequently to such delivery, in the event of his not recovering in respect of some other articles than those delivered up, or more than nominal damages in respect of those delivered up."    Brown on Actions, Trover, p. 425.

The power of our courts cannot be less than those of common law, to mould the remedy to the justice of the case.

To these remarks I may add, that I am not prepared to say that there was such a legal change of possession as would perfect the sale against creditors, even supposing the sale to be real and *bonâ fide.*   See *Hoffman* v. *Clarke,* 5 Wheaton, 549.   In that case, which was trespass, against a constable, for taking a horse alleged to belong to the plaintiff, by virtue of an execution against A., the plaintiff's brother, it appeared in evidence that the horse had belonged to A., who testified that he had sold him to the plaintiff, before the execution, for a full price. Another witness produced by the plaintiff testified that the plaintiff and A. lived together, and that after the sale the plaintiff kept the horse in the same stable in which A. had kept him.   The court then said, the law in order make sales of personal property good against creditors, and to prevent their being deceived by appearances, requires that there shall be an actual transfer of the possession, so far as the nature and condition of the property will admit of it.   The circumstance of the seller and buyer of the horse boarding together in the same house, furnishes no ground for dispensing with such actual change of the possession as will render it *distinct* and *visible,* so that it may become notorious.   It was surely practicable for the plaintiff to have taken possession of the horse, by placing him in a different stable, and either feeding and taking care of him himself, or to have procured some third person to have done so.   So here, the plaintiff might have changed the sign, &c.

Rost, J. and King, J. were also of opinion that the judgment should be affirmed.

Eustis, C. J. dissenting. The defendant, who is sheriff of the parish of Orleans, is sued by the plaintiff to recover the sum of $1,332 25, damages for an alleged tort committed by him in taking and carrying away the plaintiff's property, consisting of a lot of shoes, trunks, &c.   They were seized under an execution against one *Tillotson,* which was, including costs, for a less sum than $200. After the evidence was given in and the trial finished, the defendant offered to restore and tendered the goods seized, if the court should be of opinion that the plaintiff had made out his claim to the property.   The district judge decreed that the plaintiff should recover the goods, reserving his right to sue the defendant for whatever damages he might have sustained from a want of proper care and attention to the goods while in the defendant's custody, and ordered the defendant to pay costs.   The plaintiff has appealed.

The suit was instituted on the 12th of April, 1847, and in the petition the value of the goods taken was alleged to be $832 25, and the incidental damages are laid at $500.   By the minutes of the trial, it appears that the offer to restore the goods was made on the 4th of June following.   We have not been favored with any authority or precedent of any case determined in this State, by which the

responsibility of parties to a suit of this kind has been held to be affected by a tender made at the time and under the circumstances attending this.

A sheriff, under an execution against A. has no warrant or right to seize the property of B. In this case the defendant, under color of an execution against *Tillotson*, seized property which the district judge was satisfied belonged to the plaintiff. As the case stands before the court in relation to the property itself, the seizure and removal of the defendant's goods was a tort, for which he is responsible. The only question is, as to the extent of his responsibility. Under our laws, the sheriff has no authority to call a jury in the event of his havng reasonable ground to doubt whether the goods to be seized be really the property of the debtor in execution. The responsibility in all cases appears, by the uniform decisions of the Supreme Court, to rest on that officer, whose only protection is the bond of indemnity which, in doubtful cases, is usually asked from the creditor. The embarrassments which usually surround the performance of the duties of a sheriff, particularly in a great commercial city like this, in consequence of the shifts and devices of fraudulent debtors in putting their property beyond the reach of their creditors by sham sales and otherwise, are very serious; the interests of the administration of justice call for some remedy for the evil by means of legislation. None better in all probability can be devised, than that which has been found necessary and practical, and is in operation in England and most of our States. A law empowering sheriff's to summon a jury to determine on doubtful questions relating to the ownership of property, which is directed to be seized in execution, modified as it there is by a settled jurisprudence, would be of great public benefit, and no more than a just protection to the public officer in the discharge of his difficult and important duties.

We have kept this case a long time under advisement in order to ascertain if, as the law stands, there was any principle on which the responsibility of the sheriff can be modified, in which we could all concur, and I am satisfied there is none.

The sheriff's officers in the present case acted without malice, and, I think, the defendant is only liable to the plaintiff for the value of the goods taken away. The officers in seizing did not close the store, nor interfere with the current business, and the goods were removed in the after part of the day to the depot of the sheriff. There is no evidence of any aggravation or wantonness attending the seizure. The name of *Tillotson* was over the door on the street. The boxes were marked in his name. It appears that the plaintiff had bought out the stock of *Tillotson* in this store on the 16th February previous, and *Tillotson* remained with him in the capacity of a clerk; and under the evidence, according to all external appearances, there was good reason for believing that *Tillotson* was still the owner. The facts, however, turned out otherwise, and I am compelled to consider *McDonald*, the plaintiff, as the owner of the goods, and the defendant as guilty of a tort, in seizing and removing them. My opinion is that the plaintiff is entitled to judgment for value of the goods seized.

It is particularly to be desired that, on questions of this kind, which determine the responsibility of the executive officers of the law, the opinions of the judges of this court should be unanimous, and it is with great deference that I dissent from that of my brethren in this case. The judgment of the District Court having found the sale of the stock of goods from *Tillotson* to the plaintiff, of the 16th of February previous to the issuing of the execution, to have been valid and *bona fide*, from which opinion this court does not dissent, and having given judgment

<div style="text-align: right">McDONALD<br>v.<br>LEWIS.</div>

McDONALD
v.
LEWIS.

for the goods in consequence of the tender made in court, and not concurring with the district judge as to the validity and effect of the tender as made, I am forced to the conclusion that the sheriff is liable to the plaintiff for their value, according to what I conceive to be a legal principle, which is a necessary safeguard of the right of property.          *Judgment affirmed.*